Thank you, Your Honors. May it please the Court, my name is Polly Estes. I'm here representing the Plaintiff Appellant C.R. I would like to reserve five minutes for rebuttal. This case is basically about a child with severe autism and compulsive disorder, anxiety disorder, who cannot be left alone. He's cared for by his mother, by herself. So every time she goes out, she has to take him with her. Due to his disability, which was stipulated, he is extremely sensitive to noise, traffic, other people, various stimuli that would seem perfectly normal to us, but seem completely overwhelming to him. I want to ask you to focus on two parts of the claim here. One would be the causation, and the second would be the damages. So starting with the causation, walk me through what the evidence at trial showed in terms of why the denial of the parking spot close to the apartment caused the child to have emotional distress. The evidence that the jury heard is that C.R. has several triggers, including the car itself. Just going out in the car can make him nervous and make him more prone to having a meltdown. Not always, but the frequency goes up. He has problems with his balance and his coordination, and knowing how big a step to take. He has problems walking on any uneven surface. And as I said, he is severely triggered by noise, traffic, and other people. So one of the things that I saw in the briefing in the district court decision was, essentially, there are lots of triggers that are affecting the behavior and the emotional distress, and it's difficult to say that the denial or the lack of a close parking spot is a singular reason for emotional distress. How do you respond to that point? It may not be the singular reason, but it certainly adds to it. It makes the likelihood of a meltdown, of him running into traffic, which he has done, far more likely. And what does the record specifically show? I know we had the testimony from the child's mother that talks about some of this. Was there any other expert testimony or other information in the record from which a jury could conclude that the denial of parking, in particular, close parking, caused the distress? Yes, there was. His treating physician from UCLA, Dr. Eric Curcio, specifically testified that, due to his disability, he needed very close-by parking. Because without it, having to walk, even just a block down a very busy street, which all the streets around there are in order to get to their house, their particular unit is right next to one of two main entrances used by 11,000 people to get into this complex. And so all the streets are quite busy around there. There's lots of traffic. And in fact, he and his mother have already been injured because he was triggered while walking from a parking place on 6th Street, because they were unable to find parking near their house. And he heard a loud noise. And in typical fashion, he covers his ears, he closes his eyes, and he bolts. He just runs out, not realizing where he's running to, which is a problem. And he's six foot two, so he's no longer small enough for her to simply pick him up and carry him. Right? He's a big, healthy boy. And when he bolts, she has to run after him. And several times now, he has run into traffic. So having the space right next to his front door, right next to the grassy area, is very important, because he will often become dysregulated during the course of the car drive. Right? And he'll start thrashing around. He'll hit her. He'll hit himself. He'll cut himself with the seatbelt. Thank you. And then when they stop and she goes to let him out, he'll just bolt out of the car. So she wants the specific space that she requested, because it's next to a grassy area. So that right, you know, when he bolts out of the passenger side of the car with or without his service dog, why, they're on grass. They're safe. Right? He can fall down without hurting himself. He's not bolting into traffic. Okay. So this has been helpful in clarifying. How about on the damages? Because the district court seemed concerned with a few pieces of this. One, how did we get to this number? Two, there were some comments made at the closing argument that the district court took exception to. Why don't you address both of those? Let me begin with the second one. The remark that perhaps they should view this in a punitive light made during closing argument was not objected to. But it wasn't improper though? It's difficult sometimes. Sometimes it's difficult to object at closing. Oh, I don't know. I would object if it was. But I'm a tad outspoken. It was not objected to at the time. And although it was brought up later, he gave a directive to the jury. And this court must presume that the jury followed the jury instructions that they were given. Well, that's a fair point. And, you know, if we were reviewing this where the judge had said that the statement was not a problem, I think there would be some deference given in that situation. Of course, here the judge said it was a problem. And the judge is the one, district judge, is the one managing the courtroom and observing this. And so how much weight? It seems that you want to use some of the other instructions to delimit a little bit the effect of the statement. But the judge who was there seemed to view it as pretty problematic. Well, he seemed to view everything regarding the case as a tad problematic, frankly. Which is why you're asking us to send it back to someone else. That's right. But I still think that because juries are presumed to follow the instruction, and they were not asked about punitive damages, right? They were specifically asked solely about, you know, what damages were caused by the failure to provide a reasonable accommodation. Do you agree that the damages here were out of line with what normal cases like this would have been valued at? No, I absolutely do not. If anything, the damages were a little low. And let me tell you why. So getting to how they could have calculated damages. Number one, we're talking about emotional distress damages, right? And those are always going to be somewhat nebulous. And they're definitely up to the discretion of the jury to think about. Two things come to mind. First, they didn't respond to her at all for over a year. She had to keep asking and keep asking. And finally, after a year... Why does that increase damage? See, now you sort of are getting into the punitive area. No, no. I'm really just talking about the time period. So that for a year... There was a narrower time period that was involved in some of the other cases. Yes. And so there was a year when we know that absolutely nothing was done. And we know that for 260 days, they put a cone directly in the one spot that she had requested. Now, if you take 260, it's kind of close to 250, right? So my guess, my best guess is that's where they came up with the number. They had to come up with somewhere. Juries like round numbers, in my experience. $1,000 a day is what you're saying. Pardon me? A thousand... Is that what... 250 days, $1,000 a day basically? I thought the district court cited $1,333 and then divided that into $250,000 and came up with a little under $200 a day. Well, if you're only looking at the number of days the cone was involved, right? If you're looking at the total amount of time between when she first requested and the start of trial, then you get the $200. I mean, the problem I'm having with the damages award is the record is pretty thin in terms of evidence to help quantify the amount. Counsel urged the jury essentially to pick a number to punish the company and I'm having a hard time on this record understanding why that isn't exactly what the jury did and they came up with $250,000. Well, there was only one small remark about punishing, right? But throughout the whole course of the trial, it was what types of emotional distress does he experience? How frequently and how long has this been going on? So, the focus of the trial and the evidence at trial was really about the types of emotional distress that he experienced. Is there some reason why plaintiff's trial counsel could not have engaged some kind of an expert to help quantify the amount? Yes, there actually is. And one of our is that the district court erred in limiting the testimony to one expert, so we only were allowed to present- But he didn't limit it to say... So, he did limit it to say the expert could talk about what he observed, right? Correct. But even with that expert, was there ever a limitation or a request that that expert weigh in on damages of what he thought appropriate damages would be? No. No, I don't believe that there was. And there were no experts that were teed up so that you could proffer, this is what my excluded expert would have said had the court allowed him. Actually, they could have and I wish I had been hired sooner. I would have insisted on a proffer. So, the answer is no, there was no proffer. There was no proffer. They did, however, specifically ask to be allowed to present the testimony of the psychiatrist. That's a different issue though, right? I don't think so because he could really testify how this is affecting my client and the types of emotional distress that he was experiencing and how often it would be. And that would help to give the jury an even better basis. Can I ask, I know you're, and we'll give you time for rebuttal, but so as to the judgment, notwithstanding the verdict, we're reviewing that to see whether there's basically any evidence that would support the jury verdict, right? Yes, sure. Okay. But then in the alternative, the district court granted a new trial and that was as to all issues. We're reviewing that for abuse of discretion. Is that correct? Yes, but I'm very glad you asked that question because I wanted to talk to you about the standard of review in this case. Okay. So, the district court is not to grant a motion for new trial unless he finds that the evidence presented in favor of the jury's verdict, right, is insufficient and that the evidence against is actually the clear weight of the evidence, right? The clear weight of the evidence. I think that's right. Not insufficient. So, now hear me out. Here's, because I've got a point to make about abuse of discretion versus DeNovo. If you read the district court's opinion, it really reads like he's just weighing the evidence. Well, but you can weigh the evidence. I mean, you have to weigh the evidence for a new trial. That's what I'm getting at is it seems like there's two different analysis. Like, my point is these don't rise and fall together. We could theoretically say that the district court erred as to the judgment notwithstanding the verdict, but then uphold, because it's a different standard, the motion for a new trial. You absolutely could, but my point- But you're saying there's an error. You're saying there's a legal error. Yes, I'm saying he legally erred in looking at how to apply the standard. He made the very violation that Roy versus Volkswagen prohibited. He said, there's evidence on both sides. I'm going to pick this one. Yeah, but the problem with Roy, Roy is problematic, and I will give you that as I, I mean, I've dug into this a couple of times now, because I was on the D's case, and we are not consistent in how we've laid out the standard. But I do think that Roy has been clarified since it came out. Roy was 19, 1990, and I believe that that has been clarified. I think if you had Roy, and that was standing alone, you'd have a better argument. But I think we are clear that you have to reweigh the evidence, and I, maybe your best argument is, look, these were in equal pose. There was just as much evidence 50-50, so therefore you couldn't do it. In a way, that is it, yes. And I think that when he was weighing the evidence, he didn't actually look at the evidence that was in her favor. For instance, on the modification issue, he said, well... You can go ahead and talk about it, but I'm already with you on the modification issue. Go ahead. Yeah, but on this point, on the judge not crediting evidence, what specifically do you think he didn't credit on the causation? On the causation. I think he didn't... Well, he didn't credit a lot. He didn't credit the likelihood of a meltdown. He didn't credit at all the fact that there has already been harm from not being able to find parking, and thus fleeing into traffic. He didn't credit the fact that there are super loud noises from the construction of the museum close by. He didn't the fact that the streets, both 6th Street below the complex and the one within the complex that he would have to walk down in order to get to the carport space that they offered for the first time at trial. He didn't credit the fact that that's extremely busy, the fact that it's not lit at night, the fact that it has an uneven sidewalk. Thank you. Let me ask you a couple other quick questions. Does the family still live at the same apartment? Yes, they do. Do they have the parking spot or they don't? They do not. And one of my requests, if you read my prayer for relief in the reply brief, I very specifically go through what we're requesting. One of which is, should this panel decide to remand for a new trial, it's already been five years since she first requested that space. And we would ask that the panel hold that she's entitled to the space pending the new trial and the further proceedings. Was there a request for that though in the district court? Yes, and the district court denied it. Well, but I mean, that would be injunctive relief, wouldn't it? It would. Okay. The last question is, if the jury verdict hypothetically were reinstated, what other proceedings, if any, would remain in the district court? Attorneys' fees motion? Attorneys' fees. And on a selfish note, if you remand for a new trial because that's kind of splitting the baby, I would really appreciate if you could denote who prevailed on appeal so that maybe I can apply for attorneys' fees. Fair enough, although I'm not sure that if we split the baby, anyone would prevail. I mean, it's hard to say you would prevail if- Well, I'm going from getting absolutely nothing to getting another shot. Yeah. All right. All right. We'll give you some time for rebuttal. Thank you so much. Good morning, and may it please the court. Stephen Rayola on behalf of the appellees. I'd like to use my time to make three different points. The first is to just point out that when Judge pressed opposing counsel to point to actual evidence in the record, I didn't hear a single citation to any testimony that was made in the record. I heard characterizations of testimony. Some of that testimony is not there. For example, the story of the CR bolting into traffic. That happened once, according to the testimony in the record on pages 323 to 324. That's what prompted her to request the parking space. There was a day where she didn't park on the complex. There was a loud noise, and CR bolted. You're not contesting the fact that if he were to be given the space closest to his unit, it would be a safer place to park with less of a chance that he would run out into traffic, are you? As I understand it, it's a grassy knoll next to the parking space. We certainly wouldn't dispute that. And to be clear, we offered the appellant the nearest reserve parking space, which was a very short walk from the unit. Just offer her, if you're going to give her a reserve space, why not give her the one that's closest to the unit? We also offered the ability to move to a unit that was directly adjacent to a reserve parking  You're not answering my question. What's wrong with just giving her the space that you put the cone up for 260 days for your security officer? Well, the issue was that the appellant requested a quote-unquote assigned handicap parking space. And she attached the blue handicap placard, referred to handicapped spaces repeatedly, and my client was understandably- Did your client ever tell her it's going to cost you $7,500 that you're going to have to pay for if we make out a full handicap parking space? The cost, to be clear, Your Honor, wasn't the concern. The concern was discriminating- Under the law, the law says that if it's an accommodation that has a price tag associated with it, then the requester has to pay. Did your client ever tell Mrs. Jaffe that? According to the record, that conversation did not happen, Your Honor, but- So I want an answer to my earlier question. Why couldn't, if you're willing to give a reserve space to them elsewhere, what's wrong with giving them the reserve space right next to his unit that's closest? That wasn't what was requested, Your Honor. What was requested was an assigned handicap parking space that no other handicapped person could use. I don't know. This, at best, is a misunderstanding. I don't know that it required four years of litigation to realize that, though. Well, there were multiple conversations with the other side trying to offer something that would accommodate C.R. and the child. And I'm not- No. You'll have a chance for rebuttal. Go ahead. There were a number of conversations, and every response that we got was a demand for millions of dollars. This is the third lawsuit between the plaintiff's mother and the building. I'm not focusing on money right now. I'm focusing on a parking space, and I just don't understand why you couldn't have cut this case off before it ever got to trial by giving Mrs. Jaffe the space closest to her unit if you're willing to give her a reserve space. I just don't understand your position. There were multiple conversations. A number of them are documented and part of the record. Some of them are not. But we tried repeatedly, and what- You're still not answering Judge Tallman's question, which is- I mean, we all have it. This seems so easy. We look at this. Why didn't this just get resolved? Give her the parking space right out there. Now, maybe the response is the plaintiff is being difficult and wants a million dollars. Okay, that's one response. But this is so easy to resolve. Give her the parking spot right out in front. We're done. Can you do that? Can we give this space in front? The reserve parking spot out in front. No handicap. Just reserve the parking spot for her right out front of her apartment. You already said she could move and you'd give her one. So why can't you just- Why are you making her move? We're not making her- Well, that was the offer on the table, was move and then we'll give you the one out front. I think this is- I'm asking the same thing- Well, it was directly next to a reserve parking space. But to take a broader step back and try and answer the question, managing a building like this is a lot more complicated than you would think. There's a number of residents in the building that have disabilities, that have handicaps, that have all sorts of issues. We've had requests for reserve spaces directly outside someone's unit before. There's never been a request, like in this case, for a reserved handicap parking space outside a unit. Now we've got half a million dollars or more in legal expenses that have been run up over a four-year period of time when it could have been resolved by simply putting a blue sign up saying this is reserved for CR. I just- Is your client unwilling to do that? Can you not settle this case today? Step out in the hall with opposing counsel and get this thing resolved? We've done everything possible to settle this case and every time- Did you make that offer? We've made a number of offers, Your Honor. What you're saying is that you didn't make the offer because it would require the build out of a handicapped space. And it seems to me that's not what she's willing to settle for. She's willing to settle for that space reserved in his name, period. End of story. Why can't you do that? Well, there was testimony in the record regarding the Pandora's box that could be open where other residents would demand a space immediately outside of their unit, which is why we were trying- You're going to litigate each and every one of those at a half million dollars a shot. You're going to spend a lot of time in court. We've never had to litigate them before, Your Honor, because when we went to the tenant and tried to offer reasonable accommodations like moving the unit or offering the nearest reserved parking space, that addressed the issue. But in this case, the demand that we faced- You keep talking about offering the nearest reserved parking space. I just analytically can't follow your client's thinking. If there's a reserved parking space a half mile down the block and you're willing to give that to them, why can't you give them a reserved parking space that's closest to his apartment? What am I missing here? Again, like the rest of L.A., there's a limit on the number of spaces. There's well more residents in space. But your client's willing to give them a reserved space, just not the one that's next to his apartment. Is that what this comes down to? Well, there's two different types of parking. There's first-come, first-served parking that's meant to be available for all residents that don't have a reserved space. You were offering a reserved spot, but she had to move. Your offer, and I'm asking, well, if you're going to give her a reserved spot down the street, why can't you give her this spot in reserve? But isn't your answer, whether we agree with it or not, your answer, I think, what you're trying to say is because the spot that you're willing to give her was already one allocated as a reserved spot, and this one is first-come, first-served, so this would be taking it out of the first-come, first-served. It would be taking it out, and then every other resident who didn't have a reserved parking space might make a similar demand, and then ordinary residents wouldn't have a place this far.  They might make a similar demand, but it's not apparent that those demands would be as justified as the one that's being made here. Well, to address that issue and to move on to causation and damages, the testimony in the record from Dr. Curcio on pages 174 to 175 of the excerpts of the record indicated that CR was capable of walking from the reserved parking space to his unit, and that there was no difference between that walk and other walks that he regularly engaged in that were much longer distances. You know, there was not expert testimony that said that CR couldn't walk. So I think that's an important point to be made here with respect to, I mean, if you look at the regulation, it says if somebody's unable to walk, a reasonable accommodation might be modifying your reserved parking policy, but there was no testimony in the record that suggested that, and if anything, the facts contradicted that because the mother testified he regularly went on much longer walks that involved going through much greater obstacles, and there was no issue. There's also not... You're not denying a disability. No, no, Your Honor. And you're not denying that some reasonable accommodation needs to be made. This is just a debate, litigation, over what that reasonable accommodation needs to be. Yes, and for why we're here today, it's the evidence on causation and evidence, and that there's not... Turning back to that, what's difficult about your case when it comes to the JNOV is the standard is so high. We're reviewing that de novo, and we have to find that there is absolutely no evidence that would support the jury's finding. I have a really hard time with any of that, quite frankly, because we could view the evidence... Maybe we would have found it differently as a fact finder, but that's not what we're doing. Explain to us why there's absolutely no evidence here that would support either causation or damages. Of course. So there's two parts to that answer. The first is to just frame what happened in the proceedings below and go through the testimony, and then the second is the context of the briefing and the arguments that they've presented. So seven witnesses testified in the underlying trial. Four were employees of my client that offered no testimony that supports the jury's findings on whether the reserve parking space was a reasonable accommodation, causation, or damages. The fifth was a Pelley's expert witness who offered uncontradicted evidence that goes against the jury's findings. That left only two witnesses, the plaintiff's mother and Dr. Eric Curcio. Now, Dr. Curcio admitted on pages 176 to 177 of the excerpts of the record cleanly that there was no evidence of causation or damages in this case whatsoever. And I'll read, this is on page 177, the question and answer to Dr. Curcio. So sitting here today, you're not aware of any specific harm that has actually resulted to CR from not having an assigned handicapped parking space right in front of her unit, correct? Answer, correct. So Dr. Curcio is now out, and all we have left is the plaintiff's mother, Tracy Joffe, who testified on page 330 of the excerpts of the record that there was no way to predict what might upset her son, which meant she'd be speculating as to what upset her son on particular occasions. There are a couple conclusory statements that Ms. Joffe makes, but a number of them are not tied in any way to the issue of causation, which a parent needs to do, and they're not supported by surrounding facts. For example, the bolting into traffic, that happened before the space was requested. So there's no connection between that and harm from us not offering the reserved space. That happened before the space was requested. If you walk through all the evidence on that- But why couldn't that support the idea that if the request isn't granted, there would be harm from not granting the request? Well, that something could be the cause. Your Honor, it's not sufficient to sustain a jury's verdict, and we're not, if the plaintiff- I think it actually is. I mean, her testimony, as I understand it, I mean, you're saying, you can't award damages based on that prior incident. I give you that, but I don't understand why that evidence couldn't be used to show causation, to say, hey, this parking elsewhere was causing this, and therefore it could cause it in the future. You're saying she had to come in and say this happened repeatedly after that? I'm not saying that, Your Honor. I'm saying that there are no facts in the record documenting a single instance. For example, we came home very late. We had to park 60 seconds away, 40 seconds into the walk. There was a loud noise, and my son became dysregulated and was emotionally distressed. And if we had the closer space, that wouldn't have happened. There's no factual testimony. There's conclusory statements, and this Court has made clear that threadbare conclusory statements are not enough. And the same is true of just speculation. The jury's not permitted to speculate. So that something could possibly be the cause, but maybe doesn't happen isn't enough. And to turn it now to the issue of damages, on numerous occasions in the Rule 50 briefing and in their opening brief, appellant has been asked to point to substantial evidence that supports the jury's finding on damages. All they were able to identify is 1,300 days that she wasn't in the space. The problem with that is the appellant testified, or the plaintiff's mother testified at trial, that she regularly parked in the space. It was available, first come, first serve, and she parked there regularly. But all that does, it seems to me, is go to the amount of damages. I mean, clearly there were some days out of those 1,300, and I think the jury would have been entitled to make this inference that she couldn't have parked there. And if they thought that there was causation, which I understand you don't believe, then they could have awarded some amount of damages. There was no testimony to a specific day in a specific instance tied specifically to the parking space. And if the basis of damages, according to appellant, in the Rule 50 debriefing, all they pointed to was statements and closing statements that supported the jury's verdict, then the jury would be speculating as to the number of days when it issued that award. Was it one day that she couldn't go out? Was it one day when she couldn't get the space that she wanted? Was it 1,000 days? We don't know. The jury didn't know, which rebuts the presumption that you have that the jury followed the instructions because the jury had no way of assessing damages under the theory that they articulated at trial, which meant they were just guessing how many days and following the improper instruction. And to kind of tie this up, I mean, look at the brief that the appellant filed in this court. On causation, there are four pages of testimony that they actually cite. There's a lot of citing to characterizations of the record, but there's not any citation anywhere in there to actually quote. And a lot of times the characterizations don't line up with what happened. There's four pages of testimony on causation that they cite to. Two of them are the bolting before the space was requested. The other two pages are this general testimony that this is what happens when my son's upset, which isn't tied to the parking space. And then the other is this testimony. He gets anxious in the car when we're driving around because we don't know where we'll park, which underscores that the accommodation we offered was reasonable because the anxiety was caused by not knowing where he would park. That would have been addressed by a reserved parking space. On damages, not a single citation anywhere in the record to any evidence that would support the jury's finding, which brings me back to the beginning of my argument, which is when Judge Bress asked what evidence is there that supports causation or damages. I didn't hear a single citation to any testimony. Unless this court has any questions about any other issues, I'm going to sit back down. But we would certainly say that for the remainder of the issues, there was no abuse of discretion and there's no basis to accuse Judge Wright of being biased or incapable of handling a new trial when he reversed himself over the course of this case in his own motion and limited rulings. Thank you. I just want to address a couple of things and I apologize for interrupting counsel. I appreciate it. Go ahead. Under the rules of professional conduct in California, it is absolutely forbidden to discuss what happens in settlement negotiations. But since he has brought it up, let me tell you that I have tried repeatedly to settle this case and so did trial counsel. They have made it an absolute requirement that she move out of the complex in order to settle. I think we've gotten that and we probably should set that aside. I think you've heard it from all of us and we never know which party is being difficult. It just seems like there is an easy way to resolve this. Oh, I agree. I hope that is made clear to all parties. See if you can do something. Absolutely. The best case scenario for you is you're going to get a new trial. And is that really what you want or do you want to settle this out? So anyway, keep going. Thank you. Counsel essentially faulted Ms. Jaffe's testimony and said that it cannot count for anything because she didn't say on a very specific date what happened. And on a, you know, 40 seconds into the walk, he did this. But if you look at her testimony and you read her testimony, she does tie him being upset to not only not knowing where we park, and I will concede that if she was given a reserve spot someplace else, then he would at least know where they were going to park. But that does not resolve all of the other issues with walking such a long distance for him and down the particular path that they had chosen, which involves a lot of traffic itself. Well, he walks longer distances, doesn't he? Like when he goes to the pool. He does sometimes. And so let me address that. One of the things about autism is and his specific case, which Dr. Percio testified to, is that when he's having a good day and he's not been in the car, he can walk on familiar territory and they can go down to the pool. But the car itself is a trigger. Just going anywhere in the car is a trigger. It tends to make him upset. And so... What does that have to do with the parking spot? Because... I'll tell you. But, okay. Now I think we're hearing what counsel is objecting to, that a lot of this testimony, you're just telling us. I don't think this testimony is in the record. Show us where it's in the record. No, no. It really is in the record. Show us where it's in the record. Okay. Well, it's throughout our brief. But if you look at volume three, ER, page 165, page 337, page 330, I said 337, but I should include 336 in that, and page 340, you will find quite a bit.  three ER, I already said 165 and 330, volume two ER, pages 98 to 99, volume three ER, page 244, and pages 333 to 337. Also addressing the loud noises nearby from the construction museum is volume three, page 259. Volume three ER, pages 326 to 327, and page 157 talks about his coordinating movements and how he can fall easily on uneven pavement, which, by the way, is a reason that she didn't want a ramp. She never wanted him to build a ramp. That would actually make it harder for him. That makes it an uneven surface that he's got to get over to get out of the car. But she'd be happy if they just marked the space and said this is reserved for CR. Yes. But they can't move because the last time they moved, he had to be hospitalized, partial hospitalization, for six months, which Dr. Curcio said. And so the jury found that wasn't reasonable. The district court found that wasn't reasonable, and they did not appeal that finding. Would you be willing to take another run at settlement if we took this case under advisement for 60 days? As long as they don't insist that she has to move, but that's a non-starter. All right, all right. Counsel, would your client be willing to take another run at trying to settle this case if we sit on it for a couple of months? Yes, Your Honor. In the meantime, could you consider granting her use of the space? Just in case. We'll consider it. Thank you, counsel. Thank you very much. Thank you. Thank you to both counsel for your arguments in the case.
judges: TALLMAN, NELSON, BRESS